IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERATION BRANDS, LLC, VISUAL COMFORT OF AMERICA, LLC D/B/A VISUAL COMFORT & CO., MURRAY FEISS IMPORT, LLC, and SEA GULL LIGHTING PRODUCTS, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>DÉCOR SELECTIONS, LLC, LIGHTING COMMERCE, LLC and LARRY KRAYZMAN,<br><br>    Defendants. | No. 1:19 cv 006185<br><br>Hon. Edmond E. Chang |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
PARTIAL MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## I. Introduction

This lawsuit is a pretext to advance Plaintiffs' anticompetitive scheme to eliminate price competition for their lighting products. On its face, Plaintiffs' First Amended Complaint ("Amended Complaint") sets forth claims for various trademark violations and for tortious interference with prospective economic advantage based on Defendants' sale of Plaintiffs' products through www.lightingmerchant.com (the "Lighting Merchant website").[1] None of Plaintiffs' claims have merit, and two of the claims fail to satisfy even the minimum pleading standards. Accordingly, Defendants' present Partial Motion To Dismiss seeks dismissal under Fed. R. Civ. P. 12(b)(6) of Count 3 (tortious interference with prospective economic advantage) and Count 6 (trademark dilution under 765 Ill. Comp. Stat. 1036/65).

The Amended Complaint is Plaintiffs' second bite at the apple. Plaintiffs' original Complaint included claims for tortious interference with <u>contract</u> and trademark dilution under <u>federal</u> law. Doc. 1. Those claims were meritless and insufficiently pled, and Defendants filed a Partial Motion To Dismiss them (Docs. 27-29). Rather than defending the claims, Plaintiffs responded by filing an Amended Complaint that replaced them with new claims for tortious interference with <u>prospective economic advantage</u> (Count 3) and trademark dilution under <u>Illinois state law</u> (Count 6). Doc. 34. These new claims are also meritless and insufficiently pled.

Count 3 alleges tortious interference with prospective economic advantage based on Defendants' alleged interference in the expected relationships between Plaintiffs and their

---

[1] Defendant Lighting Commerce operates the Lighting Merchant website. Defendant Larry Krayzman is a principal of Lighting Commerce. Defendant Décor Selections has no active business operations. This Motion refers collectively to Defendants because Plaintiffs' Amended Complaint asserts claims against Defendants collectively. However, Defendants dispute that Décor Selections and Mr. Krayzman in his individual capacity have been involved in any accused activities.

authorized dealers as well as retail consumers. For multiple reasons, this claim is deficient with respect to both types of expected relationships.

As to the authorized dealers, Plaintiffs allege that Defendants knew about Plaintiffs' expected relationships with those dealers and intentionally induced them to sell products in breach of Plaintiffs' Policies that prohibit bulk sales to unauthorized dealers. The knowledge that Defendants are alleged to have is based on a letter that Plaintiffs sent to Defendants before the lawsuit, but that letter provides no support for this allegation. Second, the Amended Complaint lacks specific allegations that Defendants knew about a business expectancy for each Plaintiff. The four Plaintiffs are described as presenting differentiated circumstances, but the relevant averments are conclusory, refer collectively to "Plaintiffs," "Dealers," and "Policies," and do not tie each Plaintiff to the Policies. Third, Plaintiffs do not allege that any of Plaintiffs' expected business relationships with authorized dealers failed to ripen into a valid business relationship. Fourth, Plaintiffs fail to allege that Defendants' purported interference was "purposeful" in the sense of being improper or wrongful, or driven by something other than their own legitimate economic interests, which is privileged. As such, Plaintiffs had to plead that Defendants' actions were unjustified or malicious, but there are no such allegations.

Count 3 is also deficient with respect to retail consumers, as the Amended Complaint fails to allege that Plaintiffs had any reasonable expectation of entering into valid business relationships with retail consumers. Plaintiffs do not allege that they sell products to retail consumers, nor do they allege that Defendants knew about Plaintiffs' expected relationships with retail consumers. As with authorized retailers, the Amended Complaint does not allege that any expected relationship with retail consumers failed to ripen into a valid business relationship, or that Defendants' alleged interference was purposeful.

For both authorized dealers and retail consumers, Plaintiffs' allegation of damages is conclusory and insufficient. For example, the Amended Complaint does not cite any expected relationships that failed to ripen into a valid business relationship that might serve as a basis for damages.

Count 6 alleges trademark dilution under Illinois state law. Unlike trademark dilution under federal law, which can be shown by a mere *likelihood of dilution*, dilution under Illinois law requires *actual dilution*. The Amended Complaint fails to state a claim for dilution under Illinois law because it does not allege that Defendants' conduct caused actual dilution.

Plaintiffs have presented a moving target, shifting claims for strategic reasons. Under these circumstances, Defendants respectfully submit that Counts 3 and 6 of the Amended Complaint be dismissed with prejudice and that the case proceed based on the remaining claims.

## II.     Background

The Amended Complaint alleges that Defendants have purchased Plaintiffs' genuine products from Plaintiffs' authorized dealers and have sold them through the Lighting Merchant website. Doc. 34, ¶¶ 12, 34. There is no allegation that the products sold by Defendants are counterfeit or non-genuine. Exhibits A and B of the Amended Complaint include images that appear to be from the Lighting Merchant website. *Id.*, Ex. A at 4-9, Ex. B. These images show that the Lighting Merchant website uses Plaintiffs' company/brand names and product names/identifiers to refer to and provide factual information about the products offered for sale.

Plaintiffs allege that they have a "Resale Policy," a "Group Internet Policy," and "Unilateral Minimum Advertised Price Policy" ("UMAP policy"; collectively, the "Policies") that apply to their authorized dealers. Doc. 34, ¶¶ 24-27, Ex. A at 2-3. Plaintiffs use these Policies to maintain inflated prices for their products in the marketplace. The Lighting Merchant website sells Plaintiffs' products at prices that are below the prices specified by Plaintiffs'

UMAP policy. *See* Doc. 34, Ex. A at 2-3. This benefits consumers by providing price competition in the marketplace. Plaintiffs want to control the prices for their products and loathe the price competition presented by the Lighting Merchant website. This lawsuit is a veiled effort to eliminate that price competition.

On March 11, 2019, Plaintiffs' counsel sent a letter to Defendants' counsel on behalf of "Visual Comfort Group," a copy of which is Exhibit A the Amended Complaint. Doc. 34, Ex. A ("Letter"). The Letter asserted that the sale of Visual Comfort Group's products on the Lighting Merchant website infringes Visual Comfort Group's trademarks and copyrights. *Id.* at 3-9. The Letter expressly referred to Visual Comfort Group's Policies (*id.* at 2-3) and accused Lighting Merchant of violating the UMAP policy:

> It has come to our client's attention that your clients, Decor Selections LLC d/b/a Lighting Merchant and Larry Krayzman, without any authorization or permission, are using the Marks and the Trademarks on the website www.lightingmerchant.com, and possibly other websites, to sell the Products and ***violate the UMAPP Policy***.

*Id.* at 3 (emphasis added).

As noted in the Amended Complaint, Defendants' counsel responded by letter on March 15, 2019 denying any violation of Plaintiffs' rights. Doc. 34 at ¶ 47. In an effort to resolve the dispute, the following disclaimer was added to the Lighting Merchant website for products mentioned in the Letter:

> Lightingmerchant.com is not affiliated with Visual Comfort. By offering or advertising products on this website, Lighting Merchant does not intend to imply any affiliation, legal or otherwise, between itself and Visual Comfort.

*E.g.*, https://lightingmerchant.com/Visual-Comfort-ARN2018BZ_CG-WG at the tab "ABOUT THE BRAND."

Six months later, Plaintiffs filed their original Complaint on September 16, 2019, asserting claims for federal trademark dilution, tortious interference with contract, and other

trademark violations. Doc. 1. The original Complaint relied on Plaintiffs' Letter. Doc. 1, Ex. A, ¶¶ 29-33, 45. As part of Plaintiffs' claim for tortious interference with contract, Plaintiffs specifically alleged that Plaintiffs' Resale Policy and Group Internet Policy are binding contracts. Doc. 1, ¶¶ 44-47.

In October and November 2019, Defendants contacted the New York Attorney General's ("NYAG") office regarding Plaintiffs' lawsuit and anticompetitive behavior. Defendants provided the NYAG's office with a copy of the original Complaint and informed the NYAG's office of Plaintiffs' allegation that their Policies are binding contracts. To avoid sanction, Plaintiffs told the NYAG's office that their Policies are *not* binding contracts, contradicting the position they took in their original Complaint.

On November 12, 2019, Defendants filed a Partial Motion To Dismiss that sought dismissal of Count 2 (federal trademark dilution), Count 3 (tortious interference with contract), and the entire complaint against defendant Larry Krayzman. Docs. 27-29. Unable to defend those meritless claims, Plaintiffs did not oppose Defendants' Motion and instead filed the Amended Complaint on December 3, 2019. Doc. 34. The Amended Complaint deleted the federal trademark dilution and tortious interference with contract claims and replaced them with Illinois state law trademark dilution (Count 6) and tortious interference with prospective economic advantage (Count 3) claims.

During the short history of this lawsuit, Plaintiffs have changed their position on a fundamental issue for strategic reasons. In the original Complaint, Plaintiffs alleged that their Policies (or at least their Resale Policy and Group Internet Policy) are binding contracts. Doc. 1, ¶¶ 44-47. After Defendants contacted the NYAG's office, Plaintiffs tried to avoid sanction by contradicting their litigation position and asserting to the NYAG's office that their Policies are

*not* binding contracts. Now Plaintiffs have similarly shifted their position in this lawsuit by replacing Plaintiffs' prior claim for tortious interference with <u>contract</u> with a similarly meritless claim for tortious interference with <u>prospective economic advantage</u>.

### III. Argument

Plaintiffs' Letter reveals the real motivation behind this lawsuit: Plaintiffs dislike the price competition presented by the Lighting Merchant website, and they are trying to use their Policies to maintain inflated prices and to prevent price competition for their products. Doc. 1 & 34, Ex. A at 2-3. The Amended Complaint is not the result of new substantive information. Rather, it is strategic maneuvering to avoid sanction by the NYAG's office while still advancing Plaintiffs' anticompetitive scheme. The Amended Complaint suffers from the same types of critical deficiencies as the original Complaint, however. Accordingly, Defendants respectfully request that the Court dismiss Count 3 (tortious interference with prospective economic advantage) and Count 6 (trademark dilution under Illinois law) of the Amended Complaint.

### A.  Legal Standard For A Motion To Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *e.g.*, *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 192 F. Supp. 3d 943, 951 (N.D. Ill. 2016) (Chang, J.) (quoting *id.*). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680-81). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). "We have interpreted

*Twombly* and *Iqbal* to require the plaintiff to 'provid[e] some specific facts' to support the legal claims asserted in the complaint." *McCauley*, 671 F.3d at 616 (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. The Court Should Dismiss Plaintiffs' Count 3 (Tortious Interference With Prospective Economic Advantage)

To prevail on a claim for tortious interference with a prospective economic advantage under Illinois law, a plaintiff must prove:

> (1) [its] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.

*Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991); *Zummo v. City of Chicago*, 345 F. Supp. 3d 995, 1009 (N.D. Ill. 2018).

Plaintiffs' tortious interference claim concerns Plaintiffs' expected relationships with both authorized dealers and retail consumers. Doc. 34 at ¶¶ 59-66. The Amended Complaint fails to state a claim for both types of relationships.

#### 1. No Tortious Interference With Authorized Dealers

##### a. No Knowledge Of Plaintiffs' Expectancy

The Amended Complaint alleges that Plaintiffs expected to do business with their authorized dealers without those dealers breaching the Policies' prohibition against bulk sales to unauthorized dealers. Doc. 34, ¶¶ 59-66. The Amended Complaint alleges that, at least since receiving Plaintiffs' Letter, Defendants knew about Plaintiffs' expected relationships with their authorized dealers and intentionally induced them to sell products in breach of the bulk sales

provision in the Policies. *Id.*, ¶¶ 63, 64, 60. However, the Letter provides no support for Plaintiffs' allegations.

The Letter does not mention a prohibition against bulk sales. *Id.*, Ex. A. Instead, it generally states that "authorized distributors are contractually obligated to comply with the VISUAL COMFORT and FEISS policies and procedures including Visual Comfort's Group Resale Policy and Group Internet Dealer Policy." *Id.* at 2. Because the Letter provides no basis for Plaintiffs' allegation that Defendants knew about the prohibition against bulk sales, the Amended Complaint fails to plead Defendants' knowledge of Plaintiffs' expectancy.

An additional failure of Count 3 is that the Amended Complaint does not allege that Defendants knew about a business expectancy for each Plaintiff. Under Plaintiffs' theory of tortious interference, Defendants allegedly interfered with the business expectancy of all Plaintiffs by inducing authorized dealers to violate the Policies. Yet the Amended Complaint lacks specific allegations that each of the four Plaintiffs are subject to all three Policies. Doc. 34. Instead, the relevant averments are conclusory and refer ***collectively*** to "Plaintiffs," "Dealers," and "Policies." *Id.*, ¶¶ 24, 59-66.

Plaintiffs' Letter is again critical to the allegations about Defendants' knowledge but is likewise deficient in this context. Specifically, the Letter states that it is on behalf of "Visual Comfort Group," which is not a plaintiff, and does not identify the companies that comprise the Visual Comfort Group. *Id.*, Ex. A. In fact, the Letter does not mention plaintiffs Generation Brands or Sea Gull Lighting at all; the body of the Letter refers only to "VISUAL COMFORT" and "FEISS," which presumably correspond to plaintiffs Visual Comfort and Murray Feiss Import. At a minimum, the Amended Complaint's pleading of the tortious interference claim through collective references to "Plaintiffs" is insufficient because it provides no allegations

regarding Defendants' knowledge of plaintiffs Generation Brands or Sea Gull Lighting. The Letter also refers to Visual Comfort's "Group Resale Policy and Group Internet Dealer Policy" and "UMAPP" policy, without attaching those Policies or stating which Plaintiffs are parties to which Policies. *Id.* at 2.

Furthermore, the Amended Complaint describes the plaintiffs in a differentiated manner (*id.*, ¶¶ 2-5, 21[2]), and avers no relationship between Plaintiff Visual Comfort and the other plaintiffs. The Court can draw on its judicial experience and common sense to determine that Plaintiffs' conclusory and collective allegations regarding Plaintiffs and Policies are insufficient. *Iqbal*, 550 U.S. at 679. For example, the Amended Complaint has no allegations to suggest that Policies that apply to plaintiff Sea Gull Lighting, its authorized dealers, and products sold with the SEA GULL LIGHTING® mark would also apply to plaintiff Visual Comfort, its authorized dealers, and its mark.

Plaintiffs' theory of tortious interference and collective pleading depend on Defendants knowing that their conduct would induce all four Plaintiffs' authorized dealers to breach the Policies. The Amended Complaint has no specific allegations that tie each Plaintiff to all three Policies and, therefore, fails to allege that Defendants had knowledge of a business expectancy for each Plaintiff.

---

[2] For example, the Amended Complaint avers that Visual Comfort, Murray Feiss Import, and Sea Gull Lighting own different marks and does not allege that Generation Brands owns any marks:
- Generation Brands "designs, manufactures, and distributes quality interior and outdoor lighting fixtures, lamps, and related products (collectively, the "***Products***"), and its sole member is Quality Home Brands Holding, LLC." *Id.* at ¶ 2.
- Visual Comfort's "sole member is 40 Clarkson Holdings, LLC," and it owns the mark VISUAL COMFORT & CO.®. *Id.* at ¶¶ 3, 21.
- Murray Feiss Import's sole member is Generation Brands, and it owns the mark FEISS®. *Id.* at ¶¶ 4, 21.
- Sea Gull Lighting's sole member is Generation Brands, and it owns the marks SEA GULL LIGHTING® and MONTE CARLO®. *Id.* at ¶¶ 5, 21.

### b. No Purposeful Interference That Prevents Plaintiffs' Legitimate Expectancy From Ripening Into A Valid Business Relationship

A claim for tortious interference with prospective economic advantage also requires that Defendants' purposeful interference "prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship." *E.g.*, *Fellhauer*, 568 N.E.2d at 878; *Zummo*, 345 F. Supp. 3d at 1009; *ATC Healthcare Servs.*, 192 F. Supp. 3d at 956. "[A] party must allege that the alleged tortfeasor directed wrongful conduct at a third party business prospect to induce the third party to end its relationship with the complaining party." *Sunny Handicraft Ltd. v. Envision This!, LLC*, No. 14-cv-1512, 2015 WL 231108, at *8 (N.D. Ill. Jan. 16, 2015); *see*, *e.g.*, *Murnik v. Kabo Chems., Inc.*, No. 97 C 1845, 1997 WL 567801, at *3 (N.D. Ill Sep. 4, 1997); *Young v. Conn. Mut. Life Ins. Co.*, No. 90 C 254, 1990 WL 125496, at *4 (N.D. Ill. Aug. 17, 1990), *aff'd*, 929 F.2d 703 (7th Cir. 1991); Restatement (Second) of Torts § 766B (1979).[3]

Critically, the Amended Complaint does not allege that any of Plaintiffs' expected business relationships with authorized dealers failed to ripen into a valid business relationship. Doc. 34, ¶¶ 59-66.

### c. No Purposeful Interference That Was Improper Or With The Purpose Of Injuring Plaintiffs' Expectancies

The Amended Complaint also fails to allege that Defendants' conduct was "purposeful." Under Illinois law, "purposeful" interference refers to conduct that is improper or wrongful. *E.g.*, *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, No. 15 C 08020, 2019 WL 3554009, at *3

---

[3] The Restatement (Second) of Torts § 766B reads as follows:
> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> (b) preventing the other from acquiring or continuing the prospective relation.

(N.D. Ill. Aug. 5, 2019); *Fidelity Nat'l Title Ins. Co. of N.Y. v. Westhaven Props. P'ship*, 898 N.E.2d 1051, 1068 (Ill. App. Ct. 2007) (citing *Romanek v. Connelly*, 753 N.E.2d 1062, 1073 (Ill. App. Ct. 2001), and *Dowd & Dowd v. Gleason*, 693 N.E.2d 358, 371 (Ill. 1998)); Restatement (Second) of Torts § 766B, Comment *a* ("In order for the actor to be held liable, this Section requires that his interference be improper."). Multiple decisions applying Illinois law have cited the Restatement (Second) of Torts § 767, which provides examples of improper conduct such as physical violence, fraudulent misrepresentation, threats of illegal conduct, prosecution, civil or criminal lawsuits, and violation of business ethics and customs. *See*, *e.g.*, *ATC Healthcare Servs.*, 2019 WL 3554009 at *3; *Sunny Handicraft*, 2015 WL 231108 at *9; Restatement (Second) of Torts § 767, Comment *c*.

Moreover, a "plaintiff must show that defendant acted intentionally with the purpose of injuring the plaintiff's expectancy." *Fidelity*, 898 N.E.2d at 1067 (citing *Romanek*, 753 N.E.2d at 1073). "The lack of specific allegations that the defendants acted with the purpose of injuring plaintiff's expectancies is fatal to his claim of tortuous interference with an economic expectancy." *Kapotas v. Better Gov't Ass'n*, 30 N.E.3d 572, 596 (Ill. App. Ct. 2015).

Count 3 fails because the Amended Complaint does not allege that Defendants' conduct was improper—either by word or by reference to examples of culpable conduct such as physical violence, fraud, or threats of illegal conduct. The Amended Complaint lacks specific allegations that Defendants acted with the purpose of causing authorized dealers to breach the Policies because, as shown above, the Letter does not support the allegation that Defendants knew about the prohibition against bulk sales.

Fundamentally, Plaintiffs' allegations merely describe Defendants acting in their own economic interests, which is privileged conduct. "'[T]o the extent that a party acts to enhance its

own business interests, it has a privilege to act in a way that may harm the business expectancy of others and that privilege is greater where no contract exists between the plaintiff and the entity with which the business relationship is anticipated.'" *Fidelity*, 898 N.E.2d at 1067-68 (citing *Curt Bullock Builders, Inc. v. H.S.S. Dev., Inc.*, 586 N.E.2d 1284 (Ill. App. Ct. 1992)).

The Illinois Supreme Court has stated that, where a defendant's conduct is privileged, "it is plaintiff's burden to plead, as part of [its] *prima facie* case, that the defendant's actions were 'unjustified or malicious.'" *Fellhauer*, 568 N.E.2d at 878 (citation, brackets, and ellipsis omitted). "To demonstrate malice in a tortious interference claim, a party 'must establish that [the other party] acted with a desire to harm which was unrelated to the interest he was presumably seeking to protect by bringing about the contract breach.'" *Sunny Handicraft*, 2015 WL 231108, at *10.

Under Illinois law, Plaintiffs' allegations involve privileged conduct—namely, Defendants acting in their economic self-interest—so Plaintiffs had to plead that Defendants' actions were unjustified or malicious. The Amended Complaint contains no such allegations, and thus fails to state a claim for tortious interference.

### d. No Damages

The entirety of Plaintiffs' allegation of damages reads, "As a direct and proximate result of Defendants' interference, Plaintiffs have suffered and will continue to suffer damages in an amount to be proven at trial." Doc. 34, ¶ 66. This allegation is conclusory and wholly insufficient. For example, as noted above, Plaintiffs have not alleged that any of their expected relationships failed to ripen into a valid business relationship. Therefore, Plaintiffs fail to allege that they were damaged by Defendants' conduct. *ATC Healthcare*, 192 F. Supp. 3d at 956.

2. **No Tortious Interference With Retail Consumers**

   a. **No Reasonable Expectation Of Entering Into A Valid Business Relationship With Retail Consumers And No Knowledge Of Plaintiffs' Expectancy**

The Amended Complaint alleges that Plaintiffs "sell the Products exclusively through authorized distributors." Doc. 34, ¶ 23. There is no allegation that Plaintiffs sell to retail consumers. In addition, any argument that Plaintiffs had a reasonable expectation of entering into a valid business relationship with retail consumers would be speculative. As discussed above, the Lighting Merchant website sells Plaintiffs' products at prices below Plaintiffs' UMAP prices. If retail consumers were not able to buy Plaintiffs' products at the prices offered by the Lighting Merchant website, Plaintiffs can only speculate about what such retail consumers would buy instead. They might buy Plaintiffs' products from Plaintiffs' authorized dealers with pricing in compliance with Plaintiffs' UMAP policy, or they might buy an entirely different product instead. As a result, the Amended Complaint fails to allege that Plaintiffs had a reasonable expectation of entering into a valid business relationship with retail consumers. And because Plaintiffs have not alleged such a reasonable expectation, *a fortiori*, Plaintiffs fail to allege that Defendants knew about such expected relationships.

   b. **No Purposeful Interference That Prevents Plaintiffs' Legitimate Expectancy From Ripening Into A Valid Business Relationship**

The Amended Complaint does not allege that any expected relationship with retail consumers failed to ripen into a valid business relationship. In addition, all the reasons why the Amended Complaint fails to allege "purposeful" interference with respect to authorized dealers apply equally to retail consumers.

To the extent that Plaintiffs could be deemed as having a reasonable expectation of entering into a valid business relationship with retail customers, that would mean that Plaintiffs

-13-

and Defendants are in competition for retail customers. Under that view, Defendants' conduct would be privileged as competition, and the Plaintiffs' tortious interference claim would fail because of a lack of specific allegations that Defendants' conduct was unjustified or malicious. See Restatement (Second) of Torts § 768, Comment *c*; *Fellhauer*, 568 N.E.2d at 878.

        **c.**    **No Damages**

As discussed above, the Amended Complaint does not allege that any expected relationship with a retail consumer failed to ripen into a valid business relationship. Thus, Plaintiffs fail to allege that they were damaged by Defendants' conduct. *ATC Healthcare Servs.*, 192 F. Supp. 3d at 956. Additionally, any attempt by Plaintiffs to cite retail consumers who bought Plaintiffs products from the Lighting Merchant website instead of from Plaintiffs' authorized dealers would be speculative, for the pricing-related reasons discussed above.

**C.**    **The Court Should Dismiss Plaintiffs' Count 6 (Trademark Dilution Under Illinois State Law)**

Plaintiffs' claim for trademark dilution under the Illinois Trademark Registration and Protection Act (765 Ill. Comp. Stat. 1036/65) should be dismissed because it fails to allege that Defendants' conduct has caused ***actual dilution*** of Plaintiffs' trademarks. The Illinois trademark dilution statute provides that the owner of a famous mark may be entitled to relief if the defendant's use of the mark "causes dilution of the distinctive quality of the mark." 765 Ill. Comp. Stat. 1036/65(a). Courts have held that this provision, unlike its federal Lanham Act counterpart, requires that a plaintiff plead and prove ***actual dilution***, as opposed to ***a likelihood of dilution***. *See, e.g.*, *Joshi v. Joshi*, No. 18 c 5426, 2019 WL 3554388, at *6 (N.D. Ill. Aug. 1, 2019) ("It also requires that the plaintiff show dilution occurred, as opposed to a likelihood of dilution."); *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1100 (N.D. Ill. 2016) ("To succeed on a trademark dilution claim [under Illinois law], 'proof of actual dilution is

required . . . .'").

The Amended Complaint mentions "dilution" only once: "Defendants' use of the Trademarks is *likely [to] cause dilution* of the distinctive quality of the Trademarks . . . ." Doc. 34, ¶ 86 (emphasis added). There is no allegation that Defendants' conduct has caused *actual dilution*. Therefore, Count 6 of the Amended Complaint should be dismissed.

### IV. Conclusion

The Amended Complaint is Plaintiffs' second attempt to state claims involving tortious interference and trademark dilution, and it should be their last. As explained above, Plaintiffs filed the Amended Complaint and changed claims for strategic reasons. Under these circumstances, those claims should be dismissed with prejudice, and Plaintiffs should not be given another opportunity to amend those claims. *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 393 F. Supp. 3d 745, 755-56 (N.D. Ill. 2019). For the foregoing reasons, Defendants respectfully request that the Court dismiss *with prejudice* Count 3 (tortious interference with prospective economic advantage) and Count 6 (trademark dilution under Illinois law) of the Amended Complaint under Fed. R. Civ. P. 12(b)(6).

| | |
|---|---|
| Dated: January 10, 2020 | Respectfully submitted,<br><br>**PERKINS COIE LLP**<br><br>/s/ Thomas L. Holt<br>Thomas L. Holt<br>131 South Dearborn Street, Suite 1700<br>Chicago, IL 60603-5559<br>T: (312) 324-8400<br>F: (312) 324-9400<br>THolt@perkinscoie.com<br><br>Gene W. Lee<br>(pro hac vice)<br>1155 Avenue of the Americas, 22nd Floor<br>New York, New York 10036-2711<br>T: (212) 261-6825<br>F: (212) 977-1638<br>GLee@perkinscoie.com<br><br>John H. Gray<br>(pro hac vice)<br>2901 N. Central Avenue, Suite 2000<br>Phoenix, Arizona-2788<br>T: (602) 351-8092<br>F: (602) 648-7054<br>JHGray@perkinscoie.com<br><br>Jacob P. Dini<br>(pro hac vice)<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099<br>T: (206) 359-3832<br>F: (206) 359-4832<br>JDini@perkinscoie.com |