**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GENERATION BRANDS, LLC, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 19 C 6185** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **DECOR SELECTIONS, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Fact discovery in this case was set by Judge Chang to close on January 11, 2021. [Dkt. #69].

On September 22, 2020 the plaintiffs filed a Motion to Compel Defendants to Remove "Attorneys'

Eyes Only" Designation and Produce Documents. [Dkt. #94]. The Response was filed on October

5, 2020. [Dkt. #98]. For the following reasons, the Motion is granted in part and denied in part. A

telephonic status hearing is set for December 11, 2020 at 9:00 a.m.

Although this case is only about a year old, it involves or has already involved fourteen

attorneys from six law firms, spread across five states from the east coast to the west coast. There

have already been three versions of the Complaint – the current one being a massive 180-paragraph

submission [Dkt. #93] – and there have been two Motions to Dismiss. [Dkt. ##27, 38]. Simply put,

the case is about the design, manufacture and distribution by the plaintiff of lighting fixtures. The

defendants are charged with having sold those fixtures over the internet without authorization from

the plaintiffs. It is not, as the saying goes, the first rodeo for defendant, Larry Krayzman. *See, e.g.,*

*Minka Lighting, Inc. v. Bath Kitchen Decor, LLC,* 2015 WL 12743863, at *4 (C.D. Cal. 2015);

*Troy--CSL Lighting, Inc. v. Bath Kitchen Decor, LLC,* 2014 WL 12911165, at *5 (C.D. Cal. 2014).

Plaintiffs served their discovery requests on February 24, 2020, making defendants' responses due March 25th. But the Chief Judge's series of Coronavirus Orders extended that deadline to June 10th. But, as it turned out, the defendants used that extra time to mount the usual non-objections, like "overbroad," "unduly burdensome," and "disproportionate to the needs of the case," and "vague and ambiguous."[1] Defendants did not produce a single document, stating instead that responsive documents didn't exist or that they would conduct a reasonable search. [Dkt. #94-2]. While this type of response to a discovery request is, unfortunately, one that is all too often employed, the defendants' response is remarkable in that more than 100 days were required to put it together and – according to defendants – they hadn't even *begun* to look for documents.

Plaintiffs' counsel sent defendants' counsel a 4-page, single-spaced letter detailing the many deficiencies in defendants' offering on June 23rd. [Dkt. #94-3]. Defense counsel responded with a 6-page, single-spaced, "I-know-you-are-but-what-am-I" letter listing *plaintiffs'* discovery lapses a couple of weeks later. [Dkt. #94-4]. There followed the usual sniping back and forth through emails, mostly around the Fourth of July weekend, and focused whether one side was delaying or the other was trying to ruin the holiday. [Dkt. #94-5]. The exchange will not be quoted or detailed beyond what is necessary given the unfortunate aspersions. There followed a couple of Local Rule 37.2 phone conferences, accomplishing little, and Mr. Krayzman asked defense counsel to withdraw

---

[1] These kinds of boilerplate objections are the equivalent of no objection at all. *See Steed v. EverHome Mortgage Co.*, 308 F.Appx 364, 371 (11th Cir. 2009); *Gevas v. Dunlop*, 2020 WL 814875, at *3 (N.D. Ill. 2020); *Williams v. Biomet, Inc*., 2019 WL 6117594, at *2 (N.D. Ind. 2019); *Belcastro v. United Airlines, Inc.,* 2019 WL 1651709, at *11 (N.D. Ill. 2019)*; Gunn v. Stevens Security & Training Servs., Inc.,* 2018 WL 1737518, at *2 (N.D. Ill. 2018); *Kelley v. Board of Ed.*, 2012 WL 1108135, *2-3 (N.D. Ill. 2012)(collecting cases). *See also* cases cited in *BankDirect Capital Finance LLC v. Capital Premium Financing, Inc*., 2017 WL 5890923, *2  (N.D.Ill. 2017).

2

from the case at the end of July. [Dkt. # 79].

So, plaintiffs had to virtually start over with new defense counsel. Still, to this day, going on eight months after plaintiffs' document requests were served, plaintiffs claim defendants have not produced a single document. Conversely, and staggeringly, new defense counsel attests that he has reviewed previous discovery, including both parties' Mandatory Initial Disclosure Pilot Project disclosures, seven sets of discovery requests and responses, and 67,921 documents were produced by defendants. Clearly, there is an unmanageable gulf between the plaintiffs' statement of where document production stands and the defendants' statement of where it stands. More on this later as there is, at least, one concrete dispute between the parties that is ripe for resolution.

When the defendants finally got around to providing their supplemental interrogatory discovery responses, they insisted that the names of their third-party lighting fixture suppliers be designated as "attorneys' eyes only." The plaintiff wants that designation removed so they can see where their unauthorized lighting fixtures are coming from.

**Attorney's Eyes Only Designation**

The parties agreed to a Confidentiality Order, which Judge Chang entered on March 10, 2020. The Order allows for the designation of certain information – (a) information prohibited from disclosure by statute; (b) information that reveals trade secrets; (c) research, technical, commercial or financial information that the party has maintained as confidential; (d) medical information concerning any individual; (e) personal identity information; (f) income tax returns (including attached schedules and forms), W-2 forms and 1099 forms; or (g) personnel or employment records of a person who is not a party to the case, and which allows for this designation – as "Confidential." The Order also allowed for a higher level of protection – "Highly Confidential -Attorneys' Eyes

3

Only" – if the information's confidentiality and sensitivity warrants additional protection and is "(1)within the scope of Rule 26(c)(1)(G) and is current or future business or technical trade secrets, and plans, or (2) Confidential Information the disclosure of which would contravene an obligation of confidentiality to a third person or to a Court." [Dkt. #50, Par. 2]. Under the agreed terms, the burden is on the defendants to convince the court that the names of its suppliers are so highly confidential and sensitive as to warrant such a restrictive designation. [Dkt. # 50, Par. 9(b)]. Defendants have failed to meet that burden here.

There is nothing inherently confidential or secret about the name of a lighting fixture supplier. Harry Lime is not distributing lamps under the cover of darkness in the rubble of post-war Central Europe to the accompaniment of a zither. Defendants contend that the names of the suppliers meet the definition of "commercial or financial information that the party has maintained as confidential," but the court is skeptical. There is nothing in Mr. Krayzman's Declaration [Dkt. #98-5] that suggests any steps he has taken to maintain the secrecy of these suppliers' identities. *See, e.g., Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 902 (N.D. Ill. 2019)(discussing steps taken to maintain secrecy of commercial information including names of suppliers); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 443-44 (N.D. Ill. 2006)(discussing steps party took to keep customer names secret).

Mr. Krayzman also claims that he cannot reveal the names of the suppliers because that "would contravene an obligation of confidentiality to" them. Conveniently, he says he has no written agreements with any of his suppliers, but insists that one of the terms of his *oral* supply agreements with them is that he keep their identities confidential. [Dkt. #98-5]. Confidentiality agreements are traditionally in writing – *see, e.g., Superior Graphite Co. v. Campos*, 2020 WL

4

5210841 (N.D. Ill. 2020) – but apparently not here, and despite the seeming importance of the claimed secrecy agreement. But even if one were to uncritically accept Mr. Krayzman's claim, it is truly surprising that, in the months since this issue has come up, he has been unable to secure even one statement from a single supplier detailing a desire for anonymity. "[U]nfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir.2010). On the other hand, plaintiffs have made a case that they need to review this information as it goes to the heart of their claims. *See Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2018 WL 1071444, at *3 (N.D. Ill. 2018)(overruling objections to magistrate judge's finding that "it would hamstring [plaintiff] in being able to identify whether the sales of [plaintiff's] glasses to [defendant] were coming through authorized distributors [or] whether they were authentic glasses or not, because . . . counsel would not have the ability by themselves to understand the significance of the information that they were getting from [defendant]."); *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1090 (N.D. Ill. 2015)(plaintiff "has a substantial interest in being able to view these documents with its attorneys because the information conveyed therein goes to the heart of its trade secrets claims"). As such, as a matter of discretion, I exercise my discretion to reject defendants' desire to designate this information as "attorney's eyes only" and grant this portion of plaintiffs' Motion.

**Document Production**

Clearly, the parties are so far apart regarding what has been produced and what is lacking – over 60,000 documents apart – that the portion of plaintiffs' Motion regarding document production cannot be resolved at this time. Here is a perfect example of why a genuine "meet and confer" is a necessity under Local Rule 37.2. Formerly, it had become almost commonplace to pay

no more than lip service to the Local Rule and to hash out their discovery disputes at motion hearings, one request at a time, with a magistrate judge or district court judge. But the Chief Judge's moratorium on motion hearings has all but eliminated that avenue [Dkt. # 77], and resolution of these types of often routine discovery disputes on papers-only has often become incredibly difficult and unwieldy – and often needlessly time consuming and thus affecting other litigants waiting in the queue for resolution of their cases. *Channell v. Citicorp Nat. Services, Inc.*, 89 F.3d 379, 386 (7th Cir. 1996); *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir. 1987). Good faith adherence to Local Rule 37.2 is more important than ever. The Rule's meet and confer mandate is not an empty form of words that in the end can be ignored, allowing counsel merely to dig their heels in and obdurately repeat the very demands they made at the beginning of the conference.

Accordingly, the plaintiffs' Motion is denied as to the document requests and the parties are ordered to meet and confer in good faith, by phone as the rule requires, and attempt to resolve their differences – differences that they do not even seem to be able to specify for the court at this point. Again, "good faith" has meaning; it is not evidenced by parties "adamantly clinging to the positions with which they began." *Infowhyse GmbH v. Fleetwood Grp*., 2016 WL 4063168, at *1 (N.D. Ill. 2016); *see also Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc*., 316 F.Supp.3d 1044, 1046 (N.D. Ill. 2018)("An ultimatum on one side, met with steadfast defiance on the other, is not a good faith discussion."). "It is not going out on a limb to suspect that a [gulf of over 60,000 documents between what the parties claim has been produced] suggests a certain degree of obduracy in discovery by both sides."*Art Akiane LLC. v. Art & SoulWorks LLC*, 2020 WL 5604064, at *1 (N.D. Ill. 2020).

Some additional points should be noted. The objections often raised by the defendants – that the requests are burdensome, irrelevant, vague, etc. – are, in the main, nothing more than meaningless, boilerplate objections, which the cases hold are equivalent to no response at all. *See* n.1, *supra; Curtis v. Costco Wholesale Corp*., 807 F.3d 215, 219 (7th Cir. 2015); *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009); *Art Akiane LLC. v. Art & SoulWorks LLC*, 2020 WL 5604064, at *6 (N.D. Ill. 2020); *Zambrano v. Sparkplug Capital, LLC*, 2020 WL 1847396, at *1-2 (N.D. Ill. 2020).  Once a motion to compel is filed, it is too late to try and explain the formulaic stance on discovery requests.  Objections must be fleshed out and should be supported by case law during Local Rule 37.2 conferences. After all, an appropriate motion (or response) will have to rely on meaningful cases if the court is to sustain your position.

The requirements that the plaintiffs must meet are no less stringent. Moreover, given the volume of documents already produced, and what this case is about, plaintiffs are reminded that "relevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26." *Motorola Sols., Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019); *Hansen v. Country Mutual Insurance Co.*, 2020 WL 5763588, at *2 (N.D. Ill. 2020).[2]  As the Supreme Court and the Seventh Circuit have cautioned that "[f]ailure to exercise

---

[2] As expansive and inclusive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 587 (1993); *United States v. Murzyn,* 631 F.2d 525, 529 (7th Cir.1980); *United States v. Marks,* 816 F.2d 1207, 1211 (7th Cir.1987), the standard for relevancy under the discovery provisions of the Federal Rules of Civil Procedure is even broader. *Hofer v. Mack Trucks,* 981 F.2d 377 (8th Cir.1992); *Johnson v. Jung* 242 F.R.D. 481 (N.D.Ill.2007). The Supreme Court has cautioned that the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense.... Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." *Herbert v. Lando,* 441 U.S. 153, 177 (1979). Failure to exercise that control results in enormous costs to the litigants and to the due administration of

(continued...)

[control over what is and is not relevant] results in needless and enormous costs to the litigants and to the due administration of justice." *See* cases collected in *Sapia v. Bd. of Educ. of the City of Chicago*, 2017 WL 2060344 at *2 (N.D. Ill. 2017). And they have emphasized that the core requirement of Rule 26(b)(1) that non-privileged material sought in discovery must be "relevant" should be firmly applied. *Herbert v. Lando*, 441 U.S. 153 (1979). *Accord Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008); *Gonzalez v. Nat'l Broadcasting Co., Inc.*, 155 F.3d 618, 626 (2nd Cir. 1998); *Jett v. Warrentech Corp.*, 2020 WL 3104673, *2 (S.D. Ill. 2020); *Gray v. Acadia Healthcare Co., Inc.*, 2020 WL 4876855, *2 (E.D. Ok. 2020); *PolyOne Corp. v. Lu*, 2017 WL 2653130, *1 (N.D. Ill. 2017).

The discovery sought must not only be relevant, but it must be "proportional" to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefits." Fed.R.Civ.P. 26(b)(1).

Proportionality, like other concepts, requires a common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018) ("Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to Rule 26(b) 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' ").

The concept of proportionality did not, however, make its first appearance in the Federal

---

[2](...continued)
justice. *Cf. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Frank Easterbrook, *Discovery as Abuse,* 69 B.U.L.Rev. 635 (1989).

Rules of Civil Procedure with the 2015 Amendments. It had appeared as part of Rule 26(b)(2)(C)(iii). *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114 (S.D.N.Y. 2016); *Certain Underwriters at Lloyds v. Nat'l RR Passenger Corp.*, 318 F.R.D. 9, 14 (E.D.N.Y. 2016). And before that, the concept appeared in Rule 26(b)(C)(iii). Remembering the proportionality requirement, giving it a specific name, and placing it in Rule 26(b)(1) was designed to put a greater emphasis on the need to achieve proportionality than was thought to previously have existed given its placement in the structure of Rule 26. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016); *Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc.*, 2016 WL 11220848, at *3 (D.N.J. 2016). *See* Linda Simard, *Seeking Proportional Discovery: The Beginning of the End of Procedural Uniformity in Civil Rules,* 71 Vanderbilt L.Rev., 1919 (2018).

There appears to have been a great deal of document production in this case, which concerns distribution and sale of lighting fixtures. With all deference, it will behoove the parties, if reasonably possible, to work this out without the need for court intervention. It must be remembered that the resolution of discovery disputes is committed to the court's broad discretion, *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013), and an abuse of which occurs when no reasonable person could take the view of the district court. But discretion denotes the absence of hard and fast rules. *Langnes v. Green*, 282 U.S. 531, 541 (1931). Being a range, not a point, discretion allows two decision-makers—on virtually identical facts—to arrive at opposite conclusions, both of which can constitute appropriate exercises of discretion. *Compare United States v. Boyd*, 55 F.3d 239 (7th Cir. 1995) with *United States v. Williams*, 81 F.3d 1434 (7th Cir. 1996). *See also McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987).

9

*Accord Media v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable...."). A party who steadfastly maintains his position regarding an aspect of discovery without budging could be "right," but find itself on the losing side when an exercise of the court's discretion leads it to accept the other side's "right" position.

Not surprisingly then, a successful challenge to a magistrate judge's resolution of a discovery dispute is rare. *United States v. Re*, 401 F.3d 828, 832 (7th Cir. 2005). Is a discovery response adequate? Is a request overly broad? One judge will say yes, another will say no. Practically speaking, the losing party will often have little meaningful recourse, given the discretionary nature of the court's resolution of the problem. To overturn a ruling on a discovery motion requires a showing that the ruling was "clearly erroneous" or "contrary to law." *Hassebrock v. Bernhoft*, 815 F.3d 334, 340 (7th Cir. 2016); Rule 72(a), Federal Rules of Civil Procedure. But, in the pithy language of the Court of Appeals, a decision is only clearly erroneous if "it strikes us as wrong with the force of a 5 week old, unrefrigerated, dead fish." *Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir.2001). The court must be left "with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir.1997). Given all this, a negotiated agreement will, in many (if not most) cases, be more likely to give both sides a mutually satisfactory resolution, than asking a judge to resolve the dispute. *See Williams v. Estates of Hyde Park, LLC*, 2020 WL 5702297, at *2 (N.D. Ill. 2020). But, in the event the parties are unable to work out their document production disputes, any future discovery motions must include not merely the obligatory statement of compliance with Local Rule 37.2, but must also follow the requirements set forth in *Autotech Techs. Ltd. P'ship v. Automationdirect.com*, Inc., 2007

WL 2736681, at *2 (N.D. Ill. 2007).

**ENTERED:** _____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 10/16/20

11