IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERATION BRANDS, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | No. 19 C 6185 |
| ) | |
| v. ) | Magistrate Judge Jeffrey Cole |
| ) | |
| DECOR SELECTIONS, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**A.**

The defendants filed a Motion to Compel Production of Documents from the plaintiffs on January 29, 2021. [Dkt. #122]. While the Motion indicated that defendants had received *no documents* in response to their Document Requests Nos. 30, 44, and 45, [Dkt.# 122, at 3-5], the plaintiffs had produced certain templates that were responsive to the requests, albeit perhaps not exactly what defendants were hoping for. The plaintiffs' response brief, filed a little over a week later, told a completely different tale. It claimed the defendants' motion was "meritless" and "moot." According to the plaintiffs they "timely" produced responsive documents on the day defendants filed the Motion to Compel, claiming that they had indicated they would do so in Local Rule 37.2 meet and confer exchanges. [Dkt. # 125, at 4]. But, that's also not exactly accurate either, because, according to plaintiffs' brief, defendants' document requests were served on October 21, 2020, meaning plaintiffs' production was due on November 21, 2020, not January 29, 2021. [Dkt. #125, at 4]. And plaintiffs do not explain what and how many documents were tardily produced. After 32 pages of briefs and 121 pages of exhibits, the court still did not know precisely what their most recent discovery dispute is about. The Reply brief, unfortunately, did not resolve things.

**B.**

There appear to be three document requests and responses/objections at issue, just like there were when defendants filed their motion:

> REQUEST FOR PRODUCTION NO. 30: All policies, procedures, terms and conditions, or other provisions, effective at any time during the period in which Plaintiffs claim lost profits or other damages, which Plaintiffs claim concern, restrict, or control the actions of their authorized dealers—including but not limited to its "White Label" or "Private-Label" dealers.
>
> RESPONSE: Subject to and without waiving their general objections, Plaintiffs respond that they previously produced documents responsive to this request and will produce additional documents that are responsive to this request.
>
> REQUEST FOR PRODUCTION NO. 44: Documents sufficient to show all rights granted to nonparties to use the Asserted Marks, and any corresponding conditions.
>
> RESPONSE: Plaintiffs object to this request because it is vague and ambiguous. Subject to and without waiving their general and specific objections, Plaintiffs respond that they do not have any documents that are responsive to this request in their possession, custody, or control.
>
> REQUEST FOR PRODUCTION NO. 45: Documents sufficient to show all rights granted to nonparties to use the Copyrights, and any corresponding conditions.
>
> RESPONSE: Plaintiffs object to this request because it is vague and ambiguous. Subject to and without waiving their general and specific objections, Plaintiffs respond that they do not have any documents that are responsive to this request in their possession, custody, or control.

The discussion that occurred between counsel over the course of a month or so established that what the defendants were actually looking for with these requests were: all of the contracts plaintiffs purport to have had with their dealers that place restrictions on those dealers in terms of distribution of plaintiffs' lighting fixtures. That evidence is clearly relevant to this case. Plaintiffs allege that they impose certain policies on their authorized dealers "[i]n order to maintain the

2

integrity of [their] intellectual property and maintain a fair and level playing field among its Dealers." [Dkt. #93, ¶ 36]. Plaintiffs further allege they grant certain rights to authorized dealers, such as a license to use plaintiffs' trademarks and copyrights in approved advertising and permission to sell plaintiffs' products online. [Dkt. #93, ¶¶ 40, 43].

Plaintiffs also claim their "policies" impose "obligations" on their authorized dealers, including "certain quality control provisions," prohibitions against "certain specified advertising practices," and bans on "sales to unauthorized distributors." [Dkt. #93, ¶¶ 42, 46, 48–49]. According to plaintiffs, the policies and the obligations they impose on authorized distributors "maintain the quality of goods and the consistent and standard use of Plaintiffs' brand."[Dkt. #93, ¶ 51]. The basis for plaintiffs' entire case is, essentially, the fact that defendants do not follow these policies and, as a result, the products defendants sell "differ materially" from those sold by authorized dealers. [Dkt. #93, ¶ 154].

While we don't exactly know what plaintiffs have produced, they say they have provided the defendants with "policies, terms and conditions, and agreements with their authorized dealers." [Dkt. #125, at 7]. Apparently, this was a handful of sample agreements and some sort of policy "template." But that is insufficient given what plaintiffs are alleging. For example, the response does not prove that plaintiffs' agreements are uniform among all dealers. In any event, the plaintiffs do not want to produce all their dealer agreements because there are "hundreds" of them, and production would be, they insist, "overly burdensome and not proportional to the needs of this litigation." [Dkt. #125].

According to the Complaint, though, the whole idea is uniformity among dealers and a "level playing field" within a closed system. The plaintiffs claim that they limit the universe of authorized

3

dealers, along the lines of making it a sort of elite group that the defendants are mucking up by operating as rogues. [Dkt. #93, ¶51 ("In part, the Dealers choose to purchase and resell the Products based on the limitations Plaintiffs place on the number of Dealers on each e-commerce platform or marketplace. Plaintiffs and Dealers expect that the Products sold from those locations will be sold only by Plaintiffs or the Dealers.")]. So the requested production ought not be burdensome – at least not impermissibly so under modern standards.[1]

## C.

Unfortunately, mere unexplained claims that discovery is not "proportional" in a given case have become commonplace. But merely invoking the term is insufficient. Apart from the fact that the concept of proportionality is not particularly new,[2] like other concepts, it is not self-defining; it requires a common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018). Indeed, Chief Justice Roberts'

---

[1] Unfortunately, "[p]re-trial discovery under modern federal practice has become a monster on the loose [and] .... [p]re-trial proceedings have become more costly and important than trials themselves.'" *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986). Indeed, discovery is, by its very nature, intrusive and invasive. *Bond v. Utreras,* 585 F.3d 1061, 1067 (7th Cir.2009). *See also Flentye v. Kathrein,* 2007 WL 2903128, 2 (N.D.Ill.2007) (Discovery is, like life itself, "'nasty [and] brutish ....' Hobbes, Leviathan, Chapter XIII. Unfortunately, it is not generally short."). "Although discovery is, by definition, invasive, parties to a lawsuit must accept its travails as a natural concomitant of modern civil litigation." *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998).

[2] The concept of proportionality did not make its first appearance in the Federal Rules of Civil Procedure with the 2015 Amendments. It originally appeared as part of Rule 26(b)(2)(C)(iii). *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114 (S.D.N.Y. 2016); *Certain Underwriters at Lloyds v. Nat'l RR Passenger Corp.,* 318 F.R.D. 9, 14 (E.D.N.Y. 2016). Renumbering the proportionality requirement and placing it in Rule 26(b)(1) was designed to put a greater emphasis on the need to achieve proportionality than was thought to previously have existed given its placement in the structure of Rule 26. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). The renumbering of the proportionality requirement was thought to restore and emphasize the role proportionality was to play in discovery. *Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc.*, 2016 WL 11220848, at *3 (D.N.J. 2016). *See* the lengthy and informative discussion in Linda Simard, *Seeking Proportional Discovery: The Beginning of the End of Procedural Uniformity in Civil Rules*, 71 Vanderbilt L.Rev., 1919 (2018).

2015 Year-End Report on the Federal Judiciary noted that the addition of proportionality to Rule 26(b) "crystalize[d] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id.* The Chief Justice also stressed that "[t]he key here is careful and realistic assessment of actual need" that may "require the active involvement of ... the federal judge to guide decisions respecting the scope of discovery." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016). In short, simply choosing to contend that something is not proportional is not enough. After all, here, as in all contexts, merely saying so doesn't make it so. *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir.2010); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018). *See also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020).

### D.

Plaintiffs are, as the hoary saying goes, the "masters of their complaint." *Amgen Inc. v. Harris*, _U.S._, 136 S. Ct. 758, 760 (2016). They have honed it over the course of the three versions Judge Chang has allowed them to file. [Dkt. ## 1, 35, 93]. The current version is 50 pages and 181 paragraphs long. Pleadings shape the litigation, including the scope and ultimately the cost of discovery. *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 479 (7th Cir. 2019). Plaintiffs have chosen to make their Complaint sweeping. It comes – or should come – as no surprise that such an expansive filing might (and probably will) require expansive discovery when the time came. That time is now.

Whether the production is out of "proportion" with the needs of the case, Fed.R.Civ.P. 26(b)(1), cannot be appropriately determined because plaintiffs do not go into detail and do not carry

the burden in that regard which is theirs. Rule 26(b)(1) talks about various kinds of proportionality: the importance of the issues at stake, the amount in controversy, etc. These and other relevant factors go into any determination of whether a discovery request is "proportional" to the needs of the case. It bears repeating that mere invocation of the term is not a talismanic substitute for the complex thought that must be applied in making judgments about proportionality. *Granger v. Santiago,* 2021 WL 457533, *4 (D.C.Conn. 2021); *Guadalupe v. New York*, 2016 WL 3570545 (S.D.N.Y. 2016). Surely, plaintiffs do not mean that the sale of ceiling fans on the internet is a subject that is barred from inquiry by the doctrine of proportionality given the allegations that are being made.

Accordingly, the defendants' motion is granted and plaintiffs are ordered to produce all dealer agreements within 21 days. Given the parties' discussion of their exchanges over this matter, I find that an award of fees is inappropriate under Fed.R.Civ.P. 37(a)(5)(i);(iii) in connection with the present motion. But that does not mean that "fee shifting" will be inappropriate in the future. *See Roldan v. Coca Cola Refreshments USA, Inc.*, 2021 WL 38139 (N.D.Ill. 2021).

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/1/21